UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
08 FEB -1 PM 3:34

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

08 MC 0051

BY: _____ DEPUTY

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 99-2568 (HHK/DAR) |
| GERALD H. LEVINE AND MARIE A. LEVINE, | : Next-scheduled Court Event: Pretrial Conference: September 5, 2003 |
| Defendants. | : |

FILED
JUL 23 2003
CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

## FIRST AMENDED COMPLAINT

Plaintiff, U.S. Securities and Exchange Commission (the "Commission") alleges:

### SUMMARY

1.      Defendants, Gerald H. Levine and Marie A. Levine, fraudulently overstated the assets and revenues of C.E.C. Industries Corporation ("CEC") in public filings and statements concerning the company's fiscal years ended March 31, 1996 and March 31, 1997. During this time, as CEC's controlling officers and directors, Defendants were directly responsible for those overstatements. Defendants also published false and misleading information about CEC on the Internet. At the same time they were filing false reports on CEC with the Commission and making other false representations to investors, Defendants directed the sale of shares in CEC. Those sales resulted in cash proceeds of approximately $500,000. From these proceeds, Defendants paid substantial amounts to themselves and third parties, which resulted in benefits to Defendants.

United States District Court
For the District of Columbia
A TRUE COPY  1/29/08
NANCY MAYER WHITTINGTON, Clerk

By_____
Deputy Clerk

138

2. By engaging in such conduct, each of the Defendants committed securities fraud in violation of Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") 15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5]. Defendants also violated Exchange Act Section 13(b)(5) [15 U.S.C. § 78m(b)(5)] and Exchange Act Rule 13b2-1 [17 C.F.R. § 240.13b2-1] by knowingly falsifying CEC's books, records, and accounts, and by failing to implement a system of internal accounting controls at CEC.

3. Unless enjoined, Defendants are likely to repeat and continue these violations or similar violations.

## JURISDICTION

4. This Court has jurisdiction pursuant to the Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Sections 21(e) and 27 [15 U.S.C. §§ 78u(e) and 78aa].

5. The Commission brings this action pursuant to the Securities Act Sections 20(b) and (d) [15 U.S.C. §§ 77t(b) and (d)] and Exchange Act Sections 21(d) and (e) [15 U.S.C. §§ 78u(d) and (e)].

6. Defendants used the means and instrumentalities of interstate commerce and the mails in connection with the acts and omissions alleged herein.

## THE DEFENDANTS

7. At all times that this complaint covers, CEC was a Nevada corporation headquartered in Henderson, Nevada. It had no core business and no sources of significant recurring revenue. CEC's common stock was registered with the

Commission pursuant to Exchange Act Sections 12(b) and 12(g) [15 U.S.C. § 78l(b) and (g)], and it traded on the NASDAQ Small Cap market from February 12, 1987 until August 17, 1995. At that time, NASDAQ delisted CEC because it failed to meet NASDAQ's minimum bid price criteria. Quotations for CEC's stock then appeared on the Over-the-Counter ("OTC") Bulletin Board.

8. Defendant Gerald H. Levine lives in Las Vegas, Nevada and served as president, chief executive officer, and a director of CEC from March 1996 until February 1998 when he resigned from these positions.

9. Defendant Marie A. Levine also lives in Las Vegas and is Gerald Levine's wife. She was the principal financial officer, principal accounting officer, treasurer, secretary, and a director of CEC beginning in March 1996. After Gerald Levine resigned from his positions with CEC in February 1998, Marie Levine became acting chief executive officer of CEC. Marie Levine resigned from all her positions in CEC in 2000.

10. From on or about March 1996, through February 1998, Gerald and Marie Levine exercised authority over entities or accounts, which held nearly half of CEC's outstanding stock.

### FIRST CLAIM
### (For Securities Fraud)

11. Paragraphs 1 through 10 are realleged and incorporated by reference.

### CEC's Fraudulently Overstated Assets

12. In or about March 1996, CEC entered into an exchange agreement with O.T.S. Holdings, Inc. ("OTS"), a company Gerald and Marie Levine controlled.

3

Under that agreement, CEC acquired certain assets from OTS in exchange for giving OTS a controlling interest in CEC's stock. Gerald and Marie Levine then became CEC's principal officers and directors. The assets that CEC acquired from OTS included Mid-Nevada Art, whose principal asset was a collection of paintings by an artist named "Sky Jones," and Basia Holdings, whose principal asset was a claimed interest in a tract of land in Tennessee, which Defendants alleged held commercially valuable timber and coal.

13. Defendants filed periodic reports for CEC with the Commission in 1996 and 1997, after the exchange with OTS. On CEC's balance sheet, Defendants vastly inflated values for both the Sky Jones art work and the claimed interest in the Tennessee land. Together, the two assets represented more than half of the $4.8 million in total assets found in CEC's periodic reports to the Commission during this period. Specifically, Defendants reported a value of $1.7 million for Mid-Nevada's collection of Sky Jones paintings and a value of $800,000 for Basia's interest in the Tennessee land. CEC filed reports with the Commission and issued statements to investors, which vouched for these values and which repeated that the Tennessee land contained valuable coal and timber reserves. In truth, the paintings had only nominal value, and CEC had no rights to the land.

14. During the relevant period, Gerald Levine and Marie Levine were responsible for preparing, signing, and filing CEC's periodic reports with the Commission. Throughout this period, they knew, or were reckless in not knowing, that the values they reported for the foregoing assets were materially overstated.

### CEC's Fraudulently Overstated Revenues

15.   For its fiscal year ended March 31, 1996, Defendants reported that CEC's total revenues were $1.2 million, substantially all of which resulted from an asset exchange. By that transaction, CEC exchanged a parcel of vacant land in Utah to another party for a promissory note, which the buyer collateralized with CEC's preferred stock. CEC's recognizing revenue under such circumstances failed to conform with generally accepted accounting principles because, among other reasons the following: CEC received no down payment; CEC had no reasonable basis to believe that the other party had the ability to pay for the land; and the buyer did not commit for a repayment schedule amortizing the loan of twenty (20) years or less. By recognizing revenue from this transaction, Defendants substantially and fraudulently overstated CEC's revenue for its fiscal year ended March 31, 1996.

16.   Gerald Levine and Marie Levine were actively involved in the transaction described above and in CEC's accounting for the transaction. They were also responsible for preparing, signing, and filing CEC's periodic reports with the Commission. Throughout the relevant period, they knew, or were reckless in not knowing, that they materially overstated the revenue that CEC recognized and reported as a result of this transaction.

### The Levines' Misleading Internet Site

17.   From in or about February 1997 through in or about March 1998, Gerald and Marie Levine operated an Internet website called "Time to Buy" (www.timetobuy.com). This website purported to "profile" several "undervalued" companies, and it gave the impression that it used objective and disinterested analysis

5

to prepare its company profiles. Time to Buy profiled CEC on its website. That profile did not disclose that Gerald and Marie Levine operated Time to Buy, that they authored the profile of CEC, or that they had any interest in CEC. Time to Buy's profile of CEC repeated many of the false and misleading statements in CEC's periodic filings with the Commission, including the overstating the value of CEC's interest in Tennessee land and its Sky Jones art collection.

18. Gerald Levine and Marie Levine knew or were reckless in not knowing that information published about CEC on their "Time to Buy" website, and their failure to disclose their control of that website, was materially false and misleading.

### The Levines Profited From Selling CEC Stock.

19. During the relevant period, CEC's common stock was quoted on the OTC bulletin board and the company frequently issued shares of its stock as compensation for professional services and as consideration for certain assets and subsidiaries it acquired or purported to acquire.

20. Between March and December 1996, Defendants directed the stock transfer agent for CEC to issue CEC shares to Wire to Wire Inc., a company that they controlled, to their business attorney, Alvin Green, Esq., and to one of Mr. Levine's adult children. Defendants, and others acting in concert with them, deposited those shares with brokerage firms, located in Vancouver, British Columbia, Canada.

21. Between March 1996 and April 1997, while at the same time they were promoting CEC, as described in ¶¶ 13-17, above, Defendants directed the sale of those CEC shares.

22.     Between March 1996 and April 1997, Defendants knew or were reckless in not knowing that CEC's filings with the Commission and its other communications to investors were inaccurate and misleading.

23.     Through the use of nominee entities and persons and by making sales through Canadian brokers, Defendants sought to conceal the sale of CEC stock, which they directed.

24.     The sale of CEC's shares, described above, generated approximately $500,000, which Defendants caused to be transferred to bank accounts over which Defendants and parties related to them held authority to write checks. These transactions directly provided Defendants with at least $140,000, and indirectly provided them with an amount approaching $500,000.

25.     Defendants, directly or indirectly, by the use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange, in connection with the purchase or sale of securities in CEC: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in transactions, acts, practices or courses of business which operated as a fraud or deceit upon other persons, as is more fully set forth above.

26.     By reason of the foregoing, Defendants violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM
## (For Falsified Books and Records and
## Deficient Internal Accounting Controls)

27. Paragraphs 1 through 28 are realleged and incorporated by reference.

28. Throughout the relevant period, CEC had no discernible system of internal accounting controls. Moreover, due to the fraudulent overstatement of CEC's assets and revenues as described above, CEC's books, records, and accounts did not accurately and fairly reflected CEC's transactions or the disposition of its assets during the relevant period. As CEC's principal officers during the relevant period, Gerald and Marie Levine knowingly failed to implement a system of internal accounting controls at CEC and knowingly falsified the company's books, records, and accounts.

29. By reason of the foregoing, defendants Gerald Levine and Marie Levine violated Exchange Act Section 13(b)(5) and Exchange Act Rule 13b2-1.

### RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court enter a judgment that:

(a) Enjoins defendants from violating Securities Act Section 17(a), Exchange Act Sections 10(b) and 13(b)(5) and Exchange Act Rules 10b-5 and 13b2-1;

(b) Prohibits defendants from acting as an officer or director of any issuer, which has a class of securities registered pursuant to Exchange Act

    Section 12, or which is required to file reports pursuant to Exchange Act Section 15(d);

(c) Orders Defendants to pay civil penalties as the law provides;

(d) Orders Defendants to disgorge ill-gotten gains with prejudgment interest; and

(e) Grants such other relief, as the Court deems appropriate.

    Respectfully submitted,

    U.S. Securities and Exchange Commission, Plaintiff

    By: _____
James M. McHale, Trial Counsel,
DC Bar 111773
Peter H. Bresnan
Mark Kreitman
Stephen Herm
David S. Frye
450 Fifth Street, N.W., Mail Stop 0911
Washington, DC 20549-0911
Telephone: (202) 942-4588 (McHale)
Fax: (202) 942-9569 (McHale)
mchalejm@sec.gov

May 29, 2003