UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
08 FEB -1 PM 3:35
CLERK, U.S. DISTRICT
08 MC 0051

FILED
AUG -4 2003
CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA
BY: _____ DEPUTY

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | Civil Action No. 99-2568 (HHK/DAR) |
| C.E.C. INDUSTRIES CORPORATION, | |
| GERALD H. LEVINE, | Next-scheduled Court Event: Pretrial Conference: September 5, 2003 |
| And | |
| MARIE A. LEVINE, | |
| Defendants. | |

## SECOND AMENDED COMPLAINT

Plaintiff, U.S. Securities and Exchange Commission (the "Commission") alleges:

### SUMMARY

1. Defendants, C.E.C. Industries Corporation ("CEC"), Gerald H. Levine and Marie A. Levine, fraudulently overstated the assets and revenues of CEC in public filings and statements concerning the company's fiscal years ended March 31, 1996 and March 31, 1997. During this time, as CEC's controlling officers and directors, Defendants were directly responsible for those overstatements. Defendants also published false and misleading information about CEC on the Internet. At the same time they were filing false reports on CEC with the Commission and making other false representations to investors, Defendants Gerald and Marie Levine ("Levine Defendants") directed the sale of shares in CEC. Those sales resulted in

United States District Court
For the District of Columbia
A TRUE COPY 1/29/08
NANCY MAYER WHITTINGTON, Clerk
By _____ Deputy Clerk

cash proceeds of approximately $500,000. From these proceeds, the Levine Defendants paid substantial amounts to themselves and third parties, which benefited the Levines.

2.  By engaging in such conduct, each of the Defendants committed securities fraud in violation of Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") 15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5]. Defendant CEC also violated the reporting requirements of Exchange Act Section 13(a) [15 U.S.C. § 78m(a)] and Exchange Act Rules 13a-1, 13a-13, and 12b-20 [17 C.F.R. §§ 240.13a-1, 240.13a-13, and 240.12b-20], and the books and records and internal controls requirements of Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B) [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)]. Defendants Gerald Levine and Marie Levine also violated Exchange Act Section 13(b)(5) [15 U.S.C. § 78m(b)(5)] and Exchange Act Rule 13b2-1 [17 C.F.R. § 240.13b2-1] by knowingly falsifying CEC's books, records, and accounts, and by failing to implement a system of internal accounting controls at CEC.

3.  Unless enjoined, Defendants are likely to repeat and continue these violations or similar violations.

**JURISDICTION**

4.  This Court has jurisdiction pursuant to the Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Sections 21(e) and 27 [15 U.S.C. §§ 78u(e) and 78aa].

5. The Commission brings this action pursuant to the Securities Act Sections 20(b) and (d) [15 U.S.C. §§ 77t(b) and (d)] and Exchange Act Sections 21(d) and (e) [15 U.S.C. §§ 78u(d) and (e)].

6. Defendants used the means and instrumentalities of interstate commerce and the mails in connection with the acts and omissions alleged herein.

## THE DEFENDANTS

7. At all times that this complaint covers, CEC was a Nevada corporation headquartered in Henderson, Nevada. It had no core business and no sources of significant recurring revenue. CEC had registered its common stock with the Commission pursuant to Exchange Act Sections 12(b) and 12(g) [15 U.S.C. § 78l(b) and (g)]. CEC's stock traded on the NASDAQ Small Cap market from February 12, 1987 until August 17, 1995, when NASDAQ delisted CEC for failing to meet NASDAQ's minimum bid price criteria. Quotations for CEC's stock then appeared on the Over-the-Counter ("OTC") Bulletin Board.

8. Defendant Gerald H. Levine lives in Las Vegas, Nevada and served as president, chief executive officer, and a director of CEC from March 1996 until February 1998 when he resigned from these positions.

9. Defendant Marie A. Levine also lives in Las Vegas and is Gerald Levine's wife. She served as the principal financial officer, principal accounting officer, treasurer, secretary, and a director of CEC beginning in March 1996. After Gerald Levine resigned from his positions with CEC in February 1998, Marie Levine became acting chief executive officer of CEC. Marie Levine resigned from all her positions in CEC in 2000.

10.     From on or about March 1996, through February 1998, Gerald and Marie Levine exercised authority over entities or accounts, which held nearly half of CEC's outstanding stock.

## FIRST CLAIM
### (For Securities Fraud)

11.     Paragraphs 1 through 10 are realleged and incorporated by reference.

### CEC's Fraudulently Overstated Assets

12.     In or about March 1996, CEC entered into an exchange agreement with O.T.S. Holdings, Inc. ("OTS"), a company Gerald and Marie Levine controlled. Under that agreement, CEC acquired certain assets from OTS in exchange for giving OTS a controlling interest in CEC's stock. Gerald and Marie Levine then became CEC's principal officers and directors. The assets that CEC acquired from OTS included Mid-Nevada Art, whose principal asset was a collection of paintings by an artist named "Sky Jones," and Basia Holdings, whose principal asset was a claimed interest in a tract of land in Tennessee, which Defendants alleged held commercially valuable timber and coal.

13.     Defendants filed periodic reports CEC with the Commission in 1996 and 1997, after the exchange with OTS. On CEC's balance sheet, Defendants reported vastly inflated values for both the Sky Jones artwork and the claimed interest in the Tennessee land. Together, the two assets represented more than half of the $4.8 million in total assets stated in CEC's periodic reports to the Commission during this period. Specifically, Defendants reported a value of $1.7 million for Mid-Nevada's collection of Sky Jones paintings and a value of $800,000 for Basia's interest in the

Tennessee land. CEC filed reports with the Commission and issued statements to investors, which vouched for these values and which repeated that the Tennessee land contained valuable coal and timber reserves. In truth, the paintings had only nominal value, and CEC had no rights to the land.

14. During the relevant period, Gerald Levine and Marie Levine were responsible for preparing, signing, and filing CEC's periodic reports with the Commission. Throughout this period, they knew, or were reckless in not knowing, that the values they reported for the foregoing assets were materially overstated.

### CEC's Fraudulently Overstated Revenues

15. For its fiscal year ended March 31, 1996, Defendants reported that CEC's total revenues were $1.2 million, substantially all of which resulted from an asset exchange. By that transaction, CEC exchanged a parcel of vacant land in Utah to another party for a promissory note, which the buyer collateralized with CEC's preferred stock. CEC's recognizing revenue under such circumstances failed to conform with generally accepted accounting principles (GAAP) because, among other reasons the following: CEC received no down payment; CEC had no reasonable basis to believe that the other party had the ability to pay for the land; and the buyer did not commit for a repayment schedule amortizing the loan of twenty (20) years or less. By recognizing revenue from this transaction, Defendants substantially and fraudulently overstated CEC's revenue for its fiscal year ended March 31, 1996.

16. Gerald Levine and Marie Levine were actively involved in the transaction described above and in CEC's accounting for the transaction. They were also responsible for preparing, signing, and filing CEC's periodic reports with the

Commission. Throughout the relevant period, they knew, or were reckless in not knowing, that they materially overstated the revenue that CEC recognized and reported as a result of this transaction.

### The Levines' Misleading Internet Site

17.     From in or about February 1997 through in or about March 1998, Gerald and Marie Levine operated an Internet website called "Time to Buy" (www.timetobuy.com). This website purported to "profile" several "undervalued" companies, and it gave the impression that it used objective and disinterested analysis to prepare its company profiles. Time to Buy profiled CEC on its website. That profile did not disclose that Gerald and Marie Levine operated Time to Buy, that they authored the profile of CEC, or that they had any interest in CEC. Time to Buy's profile of CEC repeated many of the false and misleading statements in CEC's periodic filings with the Commission, including the overstating the value of CEC's interest in Tennessee land and its Sky Jones art collection.

18.     Gerald Levine and Marie Levine knew or were reckless in not knowing that information published about CEC on their "Time to Buy" website, and their failure to disclose their control of that website, was materially false and misleading.

### The Levines Profited From Selling CEC Stock.

19.     During the relevant period, CEC's common stock was quoted on the OTC bulletin board and the company frequently issued shares of its stock purportedly as compensation for professional services or as consideration for certain assets and subsidiaries it acquired or claimed to acquire.

20. Between March and December 1996, Defendants directed the stock transfer agent for CEC to issue CEC shares to Wire to Wire Inc., a company that they controlled, to their business attorney, Alvin Green, Esq., and to one of Mr. Levine's adult children. Defendants, and others acting in concert with them, deposited those shares with brokerage firms, located in Vancouver, British Columbia, Canada.

21. Between March 1996 and April 1997, while at the same time they were promoting CEC, as described in ¶¶ 13-17, above, Defendants directed the sale of those CEC shares.

22. Between March 1996 and April 1997, Defendants knew or were reckless in not knowing that CEC's filings with the Commission and its other communications to investors were inaccurate and misleading.

23. Through the use of nominee entities and persons and by making sales through Canadian brokers, Defendants sought to conceal the sale of CEC stock, which they directed.

24. The sale of CEC's shares, described above, generated approximately $500,000, which Defendants caused to be transferred to bank accounts over which Defendants and parties related to them held authority to write checks. These transactions directly provided Defendants with at least $140,000, and indirectly provided them with an amount approaching $500,000.

25. Defendants, directly or indirectly, by the use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange, in connection with the purchase or sale of securities in CEC: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of

material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in transactions, acts, practices or courses of business which operated as a fraud or deceit upon other persons, as is more fully set forth above.

26.　　By reason of the foregoing, Defendants violated Securities Act Section 17(a), Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**SECOND CLAIM**
**(For Falsified Books and Records and**

**Deficient Internal Accounting Controls)**

27.　　Paragraphs 1 through 28 are realleged and incorporated by reference.

28.　　Throughout the relevant period, CEC had no discernible system of internal accounting controls. Moreover, due to the fraudulent overstatement of CEC's assets and revenues as described above, CEC's books, records, and accounts did not accurately and fairly reflected CEC's transactions or the disposition of its assets during the relevant period. As CEC's principal officers during the relevant period, Gerald and Marie Levine knowingly failed to implement a system of internal accounting controls at CEC and knowingly falsified the company's books, records, and accounts.

29.　　By reason of the foregoing, defendant CEC has violated and is continuing to violate Exchange Act Section 13(b)(2), and defendants Gerald Levine

and Marie Levine violated Exchange Act Section 13(b)(5) and Exchange Act Rule 13b2-1.

## THIRD CLAIM
### (Against CEC for Failing to File Timely and Accurate Periodic Reports)

30. Paragraphs 1 through 29 are realleged and incorporated by reference.

31. Throughout the relevant period, CEC has been subject to the periodic reporting requirements imposed by the Exchange Act on companies having securities registered with the Commission. As described elsewhere in this complaint, the periodic filings made by CEC during the relevant period were materially inaccurate.

32. In addition, beginning with its annual report on Form 10-K for the fiscal year ended March 31, 1997, CEC has been delinquent in filing each of the periodic reports it is required to file with the Commission. CEC has filed no periodic reports since July 8, 1998, when it filed its quarterly report on Form 10-Q for the fiscal quarter ended December 31, 1997. The following table summarizes CEC's filing delinquencies:

| FORM | PERIOD ENDED | DATE DUE | DATE FILED | DAYS LATE |
|---|---|---|---|---|
| 10-K | 3/31/97 | 6/30/97 | 8/13/97 | 44 days |
| 10-Q | 6/30/97 | 8/14/97 | 11/14/97 | 92 days |
| 10-Q | 9/30/97 | 11/14/97 | 2/4/98 | 82 days |
| 10-Q | 12/31/97 | 2/13/98 | 7/8/98 | 145 days |
| | | | | MONTHS LATE |
| 10-K | 3/31/98 | 6/30/98 | 03/13/02 | 44 ½ |
| 10-Q | 6/30/98 | 8/14/98 | 03/26/02 | 43 |
| 10-Q | 9/30/98 | 11/14/98 | 03/29/02 | 40 ½ |
| 10-Q | 12/31/98 | 2/16/99 | 04/02/02 | 38 ½ |
| 10-K | 3/31/99 | 6/30/99 | 04/05/02 | 34 |
| 10-Q | 6/30/99 | 8/16/99 | 05/17/02 | 33 ½ |

28. By reason of the foregoing, CEC has violated and is continuing to violate Exchange Act Section 13(a) and Exchange Act Rules 12b-20, 13a-1, and 13a-13.

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court enter a judgment that:

(a) Enjoins defendant CEC from violating Securities Act Section 17(a), Exchange Act Sections 10(b), 13(a), and 13(b)(2), and Exchange Act Rules 10b-5, 12b-20, 13a-1, and 13a-13;

(b) Orders Defendant CEC to restate its financial statements for its fiscal years ended March 31, 1996 and March 31, 1997 (including all affected quarterly financial statements within those fiscal years), and for its fiscal quarters ended June 30, 1997, September 30, 1997, and December 31, 1997;

(c) Orders Defendant CEC to become current in its periodic reporting by filing forthwith complete and accurate periodic reports for all periods subsequent to its fiscal quarter ended December 31, 1997, and to file all future periodic reports in a timely, complete, and accurate manner;

(d) Enjoins defendants from Gerald and Marie Levine from violating Securities Act Section 17(a), Exchange Act Sections 10(b) and 13(b)(5) and Exchange Act Rules 10b-5 and 13b2-1;

(e) Prohibits defendants Gerald and Marie Levine from acting as an officer or director of any issuer, which has a class of securities registered pursuant to Exchange Act Section 12, or which is required to file reports pursuant to Exchange Act Section 15(d);

(f) Orders Defendants Gerald and Marie Levine to pay civil penalties as the law provides;

(g) Orders Defendants Gerald and Marie Levine to disgorge ill-gotten gains with prejudgment interest; and

(h) Grants such other relief, as the Court deems appropriate.

Respectfully submitted,

U.S. Securities and Exchange Commission, Plaintiff

By: _____
James M. McHale, Trial Counsel,
DC Bar 111773
Peter H. Bresnan
Mark Kreitman
Stephen Herm
David S. Frye
450 Fifth Street, N.W., Mail Stop 0911
Washington, DC 20549-0911
Telephone: (202) 942-4588 (McHale)
Fax: (202) 942-9569 (McHale)
mchalejm@sec.gov

August 4, 2003

## Certificate of Service

I hereby certify that I caused service of the foregoing Second Amended Complaint on the following counsel to Defendants by sending them copies of that pleading by Federal Express messenger service at the street addresses, listed below:

FedEx TRK No. 7916-4551-7829
John Dean Harper
1250 South Burnham Ave, Suite 212
Las Vegas, NV 89104

FedEx TRK No. 7929-4171-0222
Christopher Blake Holley, Local Counsel
Allred, Bacon, Halfhill, Landau,
& Young, P.C.
Fair Oaks Plaza
11350 Random Hills Road
Fairfax, VA 22030

FedEx TRK No. 7916-4551-6281
Mark S. Dzarnoski, Esq.
Law Offices of Dominic P. Gentile, P.C.
3960 Howard Hughes Parkway, Suite 850
Las Vegas, Nevada 89109

This the 5th day of August 2003

_____
James M. McHale